UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DORENE LEMARE HARVEY                                        CIVIL ACTION

VERSUS                                                               NO. 12-2267

MICHAEL J. ASTRUE, COMMISSIONER                   SECTION "I" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Dorene Lemare Harvey, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. §§ 405(g), 423. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 11, plaintiff filed a motion for summary judgment. Record Doc. No. 12. Defendant filed a timely reply memorandum of facts and law. Record Doc. No. 13.

I.    PROCEDURAL HISTORY

Harvey filed an application for DIB on May 14, 2010, alleging disability since May 23, 2009, due to depression, bipolar disorder, degenerative disc disease, broken left ankle, fibromyalgia, hypertension, hypertensive cardiovascular disease and multiple joint arthritis. (Tr. 116, 132, 149). Her date last insured for these benefits was March 31,

2010. After her application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 3, 2011. (Tr. 30-49). On March 29, 2011, the ALJ issued a decision denying plaintiff's application for benefits. (Tr. 17-25). The Appeals Council denied review on October 21, 2011, but later vacated its denial to consider new evidence submitted by plaintiff. After the Appeals Council again denied review on July 13, 2012, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-3).

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ's finding at step two of the sequential evaluation that plaintiff does not have a severe impairment is not supported by substantial evidence.

B.   In his alternative findings at steps four and five, the ALJ erred by failing to include non-exertional limitations in plaintiff's residual functional capacity and failing to obtain vocational expert testimony.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.   Harvey meets the disability insured status requirements of the Act through March 31, 2010. Thus, she must establish disability on or before that date to be entitled to DIB.

2.   She has not engaged in substantial gainful activity since May 23, 2009, the alleged onset date, through her date last insured.

3.   She has medically determinable impairments, consisting of degenerative disc disease, personality disorder and affective disorder.

4.   Harvey does not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months.  Therefore, she did not have a severe impairment or combination of impairments within the meaning of <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985), and 20 C.F.R. 404.1521 et seq.

5.   Although her medically determinable impairments could have been reasonably expected to produce some of the alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the finding that she has no severe impairment or combination of impairments.

6.   Harvey's medically determinable mental impairments caused no more than mild limitation in social functioning.  She has no limitation in activities of daily living or in concentration, persistence or pace, and has had no episodes of decompensation of extended duration.  Thus, her mental impairments are non-severe.

7.   Alternatively, assuming arguendo only that plaintiff had a severe impairment of degenerative disc disease as of the date last insured, she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1, including specifically Listings 1.02 and 1.04 relating to spinal impairments, and Listings 12.02 for personality disorders, 12.03 for schizophrenia, 12.04 for affective disorders and 12.06 for anxiety related disorders.

8.   Harvey has the residual functional capacity to perform the full range of light work.

9.   Based on plaintiff's age, education, work experience and residual functional capacity for light, or even sedentary, work before the date last insured, Medical-Vocational Rules 202.20 and 201.21 direct a finding that she is "not disabled."

      10.    Harvey has not been under a disability at any time from May 23, 2009 through March 31, 2010, the date she was last insured.

(Tr. 17-24).

IV.    ANALYSIS

    A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

    The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma,

503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2009).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1]  The five-step

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history."  Martinez, 64 F.3d at 174.

---

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.   <u>Factual Background</u>

Plaintiff testified that she is 48 years old, graduated from high school and had no other training after graduation.  She stated that the last time she worked was in May 2009.  She said she last worked as a monitor in a school cafeteria and she stopped working because she could not stand up for very long as a result of back problems, back pain, fibromyalgia and degenerative disk disease.  She testified that she has not looked for work since then.

Harvey stated that she takes medication for her conditions, but the medications do not work very well.  (Tr. 33-34).  She said she has discussed the ineffectiveness of her medications with her doctors as long ago as one year earlier and as recently as one month ago, but her doctors have not changed her medications.  She testified that she has not had any surgery or physical therapy and does not use any electrical stimulation unit or assistive device to walk.  She said she has had injections for the pain a few times per year, with the most recent one a few months ago, and that the injections help the pain a little.  (Tr. 34-35).

Plaintiff's attorney noted that Harvey was twisting her neck back and forth and bending it from side to side during the hearing.  Plaintiff stated that she has to stretch her neck muscles periodically all day long to make her neck feel a little better.  (Tr. 35-36).  She said she has pain in her upper and lower back.

Harvey testified that she has pain in her lower back most of the time, although she has good days and bad days. She said that she has so much burning pain on a bad day that she cannot walk and just sits on the sofa. She stated that her back pain also affects her ability to sit, so she must periodically stand up, lie down or turn over. She testified that four to five days per week are bad days, when she spends most of her time either sitting or lying down. (Tr. 36-37).

Plaintiff described her upper back pain as a tightening or aching, in which all her muscles hurt and she "get[s] knots" in the top of her back. She said that this pain does not change much in intensity. She was "not sure" whether this pain improves or worsens with movement, but said that stretching helps momentarily. Harvey stated that the upper and lower back pain both affect her ability to use her arms, lift things and use her fingers. (Tr. 37). She explained that she can only use her fingers to type on a computer for five to ten minutes before her fingers stiffen and her hands go numb. She was not sure whether that problem was caused by arthritis or fibromyalgia. She said her doctor told her that her neck and back pain are caused by degenerative disk disease, while the pain across the top part of her back and in her legs is caused by fibromyalgia.

Plaintiff stated that she has muscle pain throughout both legs from fibromyalgia when she is standing or walking, but sitting usually relieves the pain. (Tr. 38-39). When asked how long she could sit, she said it depends on where she is sitting. She stated that she was ready to get up from the padded office chair at the hearing, where she had been

sitting for ten to fifteen minutes.  She said that was a typical time period for her ability to sit.  She testified that both her upper and lower back were hurting and that it helped to stand and curve her back, by which she meant to bend over from the waist to the front, or to walk around.

Harvey stated that this was a normal day.  She said she would be able to stand for about five minutes before she had to curve her back or sit down to relieve the pressure on her back and legs.  She testified that she could only walk 50 feet before lower back and leg pain caused her to need to stop, sit and rest.  She said she would only walk around for a minute or two to stretch her back before sitting again.  (Tr. 39-40).

Plaintiff testified that she can lift about five pounds and can lift a half-gallon of milk in each hand at the same time.  She said she cannot open a new bottle of milk or jar and has to have someone else break the seal and open it for the first time.  (Tr. 41).

Harvey stated that she has no trouble bending, but has trouble getting up and has to lean on something to be able to stand up again.  She said she cannot kneel or squat because she is stuck once she is down, and the pain will start even before she tries to stand up.

Plaintiff testified that she has trouble going up and down stairs and cannot go up one flight of stairs without assistance.  She said there are stairs where she lives and she sometimes goes up those stairs with the use of a handrail.  (Tr. 42-43).  She stated that

9

she can only climb stairs by bringing one foot up one step, then bringing the other foot up to the same step before bringing the first foot to the next step.

Harvey said she still has depression and bipolar disorder.  She stated that her mood can flip like a light switch, so that she will be laughing one minute and crying the next minute for no reason, or vice versa.  She said this happens about twice a week.  She testified that these moods last for a while.  (Tr. 43-44).  She stated that there are days when she does not want to get out of bed because she is depressed and does not want to do anything.  She said she does not get up at all a few days per week.  She also testified that she has memory problems and repeats herself a lot.  (Tr. 44-45).

Plaintiff testified that she has told her doctor about these problems and that her doctor said she was not getting any better, so he put her on another medication, lithium. She said her memory improved a little after that.  She testified that she has side effects from her medications and that she cannot drive because the medications she takes for her back and muscles make her too tired.  She said she lies on her couch during the daytime four to five times every day for two to three hours at a time, for a total of ten or more hours each day.  (Tr. 45-46).

Harvey testified that she no longer receives unemployment benefits, which had stopped about one and one-half years earlier.  When the ALJ asked whether she had received benefits during the third quarter of the previous year, plaintiff responded that she does not remember when the payments stopped, but it was about a year ago.

10

Plaintiff said she has been seeing a psychiatrist, Dr. Varnado, for more than a year and she is not in any other kind of therapy.  (Tr. 46-47).

Plaintiff's attorney and the ALJ clarified that Harvey had received unemployment benefits of $76 in the first quarter of 2010, $102 in the second quarter and $96 in the third quarter.  Harvey stated that she probably received the third quarter payment at the beginning of the quarter, but did not remember receiving it.  (Tr. 47-48).  She said she was going to try to do full-time or part-time work at that time, but was not sure now that she would have been able to work.  She testified that she went to "the little building every week and looked for something that I might, could do."  However, looking back, she did not believe she would have been able to work full-time in 2010 because of the problems she described in her testimony.  (Tr. 48).

C.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 21-23).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

D.    Plaintiff's Appeal

1.    The ALJ's finding that plaintiff does not have a severe impairment is supported by substantial evidence.

The ALJ found at step two of the sequential evaluation that Harvey has medically determinable impairments, consisting of degenerative disc disease, personality disorder

and affective disorder, but does not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months.  The ALJ also found that plaintiff's fibromyalgia is not medically determinable.  Therefore, the ALJ held that Harvey does not have a severe impairment or combination of impairments within the meaning of Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), and 20 C.F.R. § 404.1521 et seq.

Plaintiff argues that the ALJ did not apply the correct legal standard when assessing severity and that the ALJ's findings are not supported by substantial evidence. Specifically, Harvey contends that the ALJ (1) improperly relied on the findings of the Disability Determination Services decisionmaker, who is not a physician, that plaintiff's impairments are non-severe; (2) failed to develop the record fully; and (3) made an improper credibility finding.

The ALJ properly applied the law in this case, and substantial evidence supports his finding that Harvey has no severe impairments.  In the Fifth Circuit, an impairment is considered non-severe if it is "'a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"  Loza, 219 F.3d at 391 (quoting Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985)) (internal quotation omitted).  The ALJ in the instant case cited the relevant standard and explained why he found that plaintiff's impairments were not severe.

12

Harvey has the burden of proving her disability with sufficient medical evidence. Reynaud v. Astrue, 226 F. App'x 401, 403 (5th Cir. 2007) (citing Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)). If she was unable to provide sufficient medical evidence, the ALJ may make a decision based on the information available. Id.

The ALJ in this case reviewed the evidence and noted that plaintiff had not submitted sufficient medical evidence to demonstrate that any of her medical conditions was severe as of March 31, 2010, the date she was last insured. (Tr. 20). "[T]o prove that she is entitled to disability benefits, [plaintiff] must not only prove that she is disabled, but that she became disabled prior to the expiration of her insured status." Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992) (citing 42 U.S.C. § 423(a), (c)); accord Brunson v. Astrue, 387 F. App'x 459, 460 (5th Cir. 2010).

Plaintiff argues incorrectly that the ALJ relied on the opinion of the Disability Determination Services decisionmaker, who is not a medical consultant, regarding the medical issue of severity. The record contains the opinion of Doris LeBlanc, M.D., the reviewing physician who electronically signed the "Medically Determinable Impairments and Severity" portion of the original Disability Determination Services decision denying benefits. Dr. LeBlanc opined that Harvey had medically determinable, but non-severe, impairments of degenerative disc disease, personality disorder and affective disorder, and that the evidence failed to establish any medically determinable mental impairment. Dr.

13

LeBlanc also found insufficient evidence prior to the date last insured to evaluate plaintiff's other allegations of disabling impairments.  (Tr. 54-55).

"State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(f)(2)(i). "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence." Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)); accord Butler v. Barnhart, 99 F. App'x  559, 560 (5th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)).  The ALJ properly considered Dr. LeBlanc's opinions in making his findings regarding the severity of plaintiff's impairments.  Dr. LeBlanc's opinions are not contradicted by any other medical opinion evidence and are supported by the medical evidence of record.

"The severity of an impairment is measured in terms of its effect on the claimant's ability to work.  A mere diagnosis is insufficient to establish that an impairment is severe because it does not reveal the extent to which the impairment limits the claimant's ability to work."  Stone v. Astrue, No. 8:12-cv-35-T-17TBM, 2013 WL 1212889, at *6 (M.D. Fla. Feb. 26, 2013), report & recommendation adopted, 2013 WL 1212881 (M.D. Fla. Mar. 25, 2013) (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)); accord Casares v. Astrue, No. 4:11CV162, 2013 WL 960229, at *6 (S.D. Miss. Feb. 25, 2013),

14

report & recommendation adopted, 2013 WL 960186 (S.D. Miss. Mar. 12, 2013); Morris v. Astrue, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012), report & recommendation adopted, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999)); Ranes v. Astrue, No. 3:08-CV-2030-D, 2009 WL 2486037, at *3 (N.D. Tex. Aug. 14, 2009) (citing Randall v. Astrue, 570 F.3d 651, 657-59 (5th Cir. 2009)); Schultz v. Astrue, No. 09-3238, 2010 WL 2733605, at *9 (E.D. La. June 8, 2010), report & recommendation adopted, 2010 WL 2733565 (E.D. La. July 8, 2010); Parra v. Astrue, No. 4:07-CV-443-Y, 2009 WL 49999, at *5 (N.D. Tex. Jan. 6, 2009) (citing Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)).

Therefore, plaintiff's diagnoses alone do not establish the severity of her impairments.  As the ALJ noted, some of the physicians' handwritten notes are not entirely legible.  Parts of them can be deciphered, and there are typed reports of objective tests, some doctors' reports and hospital notes.  My careful review of the entire record reveals that the medical evidence documents Harvey's diagnoses of degenerative disc disease and bipolar disorder before expiration of her insured period.  However, the mild to moderate objective test results and clinical findings, or lack of clinical findings, which the ALJ accurately described in his opinion are substantial evidence on which he could rely for his findings that plaintiff's degenerative disc disease and affective (bipolar) disorder are non-severe.

The treatment notes of Robert A. Varnado, MSN, APRN-BC[2] (Tr. 302-28), are not substantial evidence to establish the severity of plaintiff's bipolar disorder for two reasons. First, Varnado is a mental health nurse practitioner, not a physician or psychologist. A nurse practitioner is <u>not</u> an "acceptable medical source," but is considered an "other" medical source. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). This distinction is important because only acceptable medical sources can provide medical opinions to show the severity of an impairment and how the impairment affects the claimant's functional ability. <u>Patterson v. Astrue</u>, No. 10-0600, 2011 WL 6157475, at *8 (W.D. La. Apr. 13, 2011) <u>report & recommendation adopted</u>, 2011 WL 2294807 (W.D. La. June 8, 2011) (citing 20 C.F.R. §§ 1527(a)(2), 416.927(a)(2); <u>Griego v. Sullivan</u>, 940 F.2d 942, 945 (5th Cir. 1991)); <u>accord</u> <u>Vandeveerdonk v. Astrue</u>, No. 3-09-CV-1921-BD, 2011 WL 4001059, at *6 (N.D. Tex. Sept. 8, 2011) (citing <u>Thibodeaux v. Astrue</u>, 324 F. App'x 440, 445 (5th Cir. 2009)); <u>Reynolds v. Astrue</u>, No. 1:08cv228-SAA, 2010 WL 583918, at *7 n.12 (N.D. Miss. Feb. 16, 2010)). Nurse Practitioner Varnado's psychiatric evaluation form, which contains plaintiff's initial diagnoses, indicates that it must be signed by a psychologist or psychiatrist, but the form is <u>not</u> signed by anyone except Nurse Practitioner Varnado. His opinions are not entitled to controlling weight. <u>Thibodeaux</u>, 324 F. App'x at 445.

---

[2]Master's of Science in Nursing, Advance Practice Registered Nurse–Board Certified.

16

Second, Harvey did not begin her treatment with Nurse Practitioner Varnado until July 14, 2010, more than three months after her date last insured, and the progress notes extend to October 18, 2011, more than 15 months after the end of the insured period. Although the Appeals Council considered this new evidence that plaintiff submitted, the Appeals Council's conclusion that the evidence did not affect the outcome of the ALJ's decision is supported by substantial evidence.   Nurse Practitioner Varnado's notes contain no "express retrospective medical opinion relating back to the insured period." McLendon v. Barnhart, 184 F. App'x 430, 432 (5th Cir. 2006) (citing Likes v. Callahan, 112 F.3d 189 (5th Cir. 1997); Ivy v. Sullivan, 898 F.2d 1045 (5th Cir. 1990)).  This evidence, "when considered in light of the entire record, does not establish the existence of [plaintiff's] severe medical impairment as far back as [the alleged onset] date."  Id.

To the extent that Nurse Practitioner Varnado's notes may be relevant to plaintiff's condition during the insured period, the records indicate that Harvey's bipolar disorder symptoms improved with treatment.   A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling.  Muckelroy v. Astrue, 277 F. App'x 510, 511-12 (5th Cir. 2008) (citing Burnside ex rel. Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir. 1988), abrogated on other grounds by Sullivan v. Zebley, 493 U.S. 521, 527 (1990)); Hebert v. Barnhart, 197 F. App'x 320, 323 (5th Cir. 2006) (citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.

1987); <u>Acosta v. Astrue</u>, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012); <u>Quintanilla v. Astrue</u>, 619 F. Supp. 2d 306, 321 (S.D. Tex. June 27, 2008).  Neither Nurse Practitioner Varnado's notes nor the rest of the medical evidence corroborates plaintiff's testimony that she suffered from significant mood swings twice a week and was unable to get out of bed a few days per week because of depression.  The ALJ's finding, confirmed by the Appeals Council after review of Nurse Practitioner Varnado's records, that Harvey's bipolar disorder was not severe is supported by the substantial evidence.

The ALJ's finding that plaintiff's fibromyalgia was not medically determinable during her insured period is also substantially supported by the medical records.  A medically determinable "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Plaintiff's primary care physician, Allan Larcena, M.D., included a diagnosis of fibromyalgia in his progress notes on May 20, June 10 and August 14, 2009.  (Tr. 236, 242, 244).  However, nothing legible in Dr. Larcena's notes from plaintiff's first visit to him on September 15, 2008 through her August 14, 2009 visit indicates the clinical basis for this diagnosis.  There appear to be references to "trigger points"[3] in Dr. Larcena's

---

[3]<u>See</u>"Fibromyalgia," <u>The Merck Manual for Health Care Professionals</u> (diagnosis "is based on clinical criteria, including tenderness at some of the 18 specified tender points.  Most experts no longer require a specific number of tender points to make the diagnosis, as originally proposed (= or > 11 of 18).  Patients with only some of the specified features may still have fibromyalgia."),

May 20 and June 10, 2009 notes, but there are no related legible findings. Dr. Larcena noted on May 20th that Harvey needed a referral to a rheumatologist. However, there is no evidence that such a referral occurred until more than eight months later.

Raquel Cuchacovich, M.D., a rheumatologist at LSU Healthcare Network, saw Harvey on February 11, 2010 for evaluation of possible fibromyalgia. Dr. Cuchacovich diagnosed fibromyalgia based on plaintiff's reported symptoms and physical examination findings, which included tenderness to palpation at 18 out of 18 trigger points. (Tr. 214). Harvey returned to see Dr. Cuchacovich for review of her laboratory test results on March 23, 2010, a week before her last insured date for DIB. Dr. Cuchacovich observed that plaintiff had tenderness at 10 out of 18 trigger points and the doctor started Harvey on medication for fibromyalgia. (Tr. 212). At her next visit on June 22, 2010, Harvey had reactions at only 4 out of 18 trigger points and she reported that she was sleeping well with no side effects of her medication. (Tr. 278). There are no other medical records regarding fibromyalgia during the insured period, or afterwards. This scant record, along with Dr. LeBlanc's opinion on review of the medical records, supports the ALJ's finding that plaintiff's fibromyalgia was not medically determinable.

In making his non-severity determinations, the ALJ also relied on his findings regarding Harvey's credibility. Determining the credibility of plaintiff's "subjective

---

http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/bursa _muscle_and_tendon_disorders/fibromyalgia.html?qt=fibromyalgia&alt=sh#Symptoms and Signs (last full review/revision Feb. 2013 by Joseph J. Biundo, MD; content last modified Mar. 2013) (last visited May 1, 2013).

evidence of pain and disability" is a necessary part of the ALJ's consideration of the evidence. Perez, 415 F.3d at 462. The ALJ is bound to explain his reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in his articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007). The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required. James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

In the instant case, "[t]he ALJ properly considered the record as a whole, including the available medical evidence and the nature and extent of the plaintiff's daily activities, in determining that the plaintiff's subjective complaints were not fully credible." Hoelck v. Astrue, 261 F. App'x 683, 686 (5th Cir. 2008) (citing Hollis v. Bowen, 837 F.2d 1378, 1384-85 (5th Cir. 1988); Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995)).

The ALJ explained why he found that Harvey's subjective symptoms and alleged limitations were not credible and were inconsistent with the evidence as a whole.  First, substantial evidence in the medical record, including some of the clinical and objective findings, supports the ALJ's conclusion that plaintiff's degenerative disc disease and mental conditions are not as severe as she alleges.  In addition to the findings specifically noted by the ALJ, the record contains no corroboration of plaintiff's testimony that she had received multiple injections for pain a few times per year since her alleged onset date.  In her own thorough medical records summary in her memorandum, the only time she describes an injection is her assertion that Frederick Keppel, M.D., "administered a c-spine injection" on January 5, 2008.  (Tr. 208).  My  review of the record reveals no such notation at that page[4] or elsewhere.

Second, the ALJ did not err by discounting Harvey's credibility because she received unemployment benefits during the third quarter of 2010, long _after_ her alleged onset date of May 23, 2009.  Harvey testified that she was going to try to do full-time or part-time work at that time and that she went to the unemployment office every week and looked for a job.  Various circuit courts have held that "[a]pplications for unemployment and disability benefits are inherently inconsistent.  There is 'no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and

---

[4]Dr. Keppel's notes are certainly difficult to read, but I believe the notation to which plaintiff refers actually says "P[lan] – (1) get MRI of c-spine."  (Tr. 208).

willing to work.'"  Workman v. Comm'r of Soc. Sec., 105 F. App'x 794, 801 (6th Cir. 2004) (quoting Bowden v. Comm'r, No. 97-1629, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999)) (citing Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983)); accord Moore v. Astrue, No. 5:12-CV-00755-RDP, 2013 WL 1661435, at *7 (N.D. Ala. Apr. 11, 2013) (citing Workman, 105 F. App'x at 801-02; Schmidt v. Barnhart, 395 F.3d 737, 745 (7th Cir. 2005); Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991)).

Finally, Harvey argues that the ALJ should have re-contacted her physicians and/or ordered a consultative examination if the record was insufficient to make a decision on the severity of her conditions.  The Fifth Circuit has held that, "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." Newton, 209 F.3d at 453 (emphasis added).[5]  In the instant case, the medical records are extensive and the ALJ had sufficient medical opinion evidence based on personal

--------

[5]However,

> [e]ffective March 2012, the regulation containing the subsection on recontacting medical sources, 20 C.F.R. § 404.1512, was amended to eliminate this rule from the regulation. Therefore, the current regulation no longer contains paragraph (e) "Recontacting medical sources."  The purpose of the change was to give adjudicators more flexibility in determining how to best obtain information, with the goal of making disability determinations more quickly and efficiently.

Andre v. Astrue, No. 11-250-JJB-SCR, 2012 WL 5363321, at *4 n.13 (M.D. La. Sept. 24, 2012), report & recommendation adopted, 2012 WL 5363317 (M.D. La. Oct. 30, 2012) (citing 77 Fed. Reg. 10651-01, 2011 WL 7404303 (Feb. 23, 2012)).

examination or treatment of Harvey to obviate any need to re-contact her treating physicians to resolve any conflicts or ambiguities in the records. Jones v. Astrue, 691 F.3d 730, 733 (5th Cir. 2010) (citing Cornett v. Astrue, 261 F. App'x 644, 648-49 (5th Cir. 2008)). In addition, because Harvey was represented by counsel and had an opportunity to testify at the hearing regarding her disability, the ALJ was under no additional obligation to make a "reasonable effort" to obtain more medical records from her own physicians. Id. at 734 (citing 20 C.F.R. § 404.1512(d); Vine v. Astrue, No. 3:10-895-BK, 2010 WL 4791487, at *6 (N.D. Tex. Nov. 18, 2010)).

The decision whether to acquire a consultative examination is within the ALJ's discretion and must be ordered only when necessary to develop a full and fair record. Reynaud, 226 F. App'x at 403 (citing Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989); Pierre v. Sullivan, 884 F.2d 799, 802 (5th Cir. 1989)). "To determine whether the ALJ fully and fairly developed the record, we ask whether the record contained sufficient evidence for him to make an informed decision. So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." Hernandez v. Astrue, 269 F. App'x 511, 515 (5th Cir. 2008) (citing 20 C.F.R. §§ 404.1516, 416.916; Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996); Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989)).

Here, the ALJ had an extensive medical record before him.  In such circumstances, he was not required to order a consultative examination.  Accordingly, plaintiff's first assignment of error lacks merit.

> ### 2.    The ALJ did not err by failing to include non-exertional limitations in plaintiff's residual functional capacity and failing to obtain vocational expert testimony.

Assuming for the sake of argument only that plaintiff had a severe impairment of degenerative disc disease as of the date last insured, the ALJ made alternative findings at steps four and five of the sequential evaluation.  Those findings were that Harvey has the residual functional capacity to perform the full range of light work and that, based on her age, education, work experience and residual functional capacity for light, or even sedentary, work before the date last insured, Medical-Vocational Rules 202.20 and 201.21 direct a finding that she is "not disabled."  Harvey argues that the ALJ should have included non-exertional limitations caused by pain in her residual functional capacity, which would have precluded the use of the Medical-Vocational Rules and would have required vocational expert testimony.

The ALJ may meet his burden at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing "either by relying on the medical-vocational guidelines contained in Appendix 2 of the Social Security regulations or by obtaining the testimony of a vocational expert." Dominguez v. Astrue, 286 F. App'x 182, 188 (5th Cir. 2008) (citing

Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987)). The Fifth Circuit's "precedents permit the Commissioner to rely on the Medical-Vocational Guidelines '[w]hen the characteristics of the claimant correspond to criteria in' those Guidelines and the claimant . . . suffers only from . . . non-exertional impairments [that] do not significantly affect his residual functional capacity.'" Menchaca v. Barnhart, 179 F. App'x 215, 217 (5th Cir. 2006) (quoting Fraga, 810 F.2d at 1304).

The same substantial evidence that supports the ALJ's step two findings discussed above support his conclusion that plaintiff's pain is not significant enough to limit her capacity to perform the full range of light or sedentary work.  Her mild limitation in social functioning would not affect her ability to perform unskilled work, which is the type of work addressed by the Medical-Vocational Rules.  The testimony of a vocational expert was therefore not required to carry the Commissioner's burden.

Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ did not err by finding that plaintiff does not have a severe impairment or combination of impairments, and that plaintiff's fibromyalgia is not medically determinable, as his conclusions are supported by substantial evidence.  The ALJ did not err by failing to include non-exertional limitations in plaintiff's residual functional capacity or by failing to obtain vocational expert testimony.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED and her complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this _____6th_____ day of May, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.